UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

AARON STEVENSON, 15221-0555,

Petitioner,

-v- 13-CV-518-JTC

JAMES VOUTOUR, Sheriff,

Respondent.

## INTRODUCTION

Petitioner Aaron Stevenson has filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking release from custody of the Niagara County Jail and restoration of good time credits. Item 1. As directed by this court's order entered May 22, 2013 (Item 3), respondent has submitted an answer and return in opposition to the motion (Item 4), along with an accompanying memorandum of law (Item 5). Petitioner has declined to file a reply/response. For the reasons that follow, the petition is denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner is a federal prisoner who was serving his sentence of imprisonment at a residential program at the Buffalo Halfway House, Inc. ("Halfway House"). Item 1, ¶ 5. As part of the program, he was employed by the Bethel Head Start program as a cleaner and was obligated to remain in telephonic contact with the staff at the Halfway House through his supervisor on the work site. Item 4-4. On February 13, 2013, petitioner signed out of the Halfway House at approximately 5:44 p.m. to report to work. He called at 6:28 p.m.

to report that he had arrived at the work site at 1461 Main Street in the City of Buffalo. At 8:15 p.m., petitioner's supervisor called to report that they were leaving 1461 Main Street to travel to another work site. The supervisor called at 10:20 p.m. to report that they were at the Martha Mitchell Center at 70 Oakmont Street. Phyllis Griggs, a resident manager at the Buffalo Halfway House, asked to speak with petitioner and was told by his supervisor that petitioner was taking out garbage. The supervisor told Ms. Griggs that he would have petitioner call her back. When petitioner did not returned the call by midnight, the Assistant Director of the Halfway House went to the Mitchell Center for a job site visit. The building was dark and no one answered her knocks on the door. Eventually, a man answered the door and said that he was the only person working there. Petitioner called the halfway house at 1:25 a.m., stating that he was leaving the Mitchell Center at that time to return to the Halfway House. Item 1, ¶¶ 2-24; Item 4-5, Documents 2-c, 2-e. In an Incident Report dated February 14, 2013, petitioner was charged with escape and the matter was referred for a disciplinary hearing. Item 4-5, Document 2-c.

A disciplinary hearing was conducted on February 19, 2013 at which time petitioner was found guilty of escape. It was recommended that he be removed from the residential program and forfeit 25% of his good time credits. After a review of the decision, petitioner was removed from the program and he forfeited 27 days of good time credit. Item 4-5, Document 2-f. Petitioner was notified of this decision in a memorandum dated March 14, 2013. In the memorandum, he was advised that he could appeal the decision to the Regional Director within 20 days of the receipt of the memorandum. Item 4-5, Document 2-h. An appeal of the decision was submitted to the United States Bureau of Prisons ("BOP") on April 17, 2013. Item 4-1, ¶ 7. Petitioner has been released from the custody

of the Bureau of Prisons and is currently on supervised release. Item 5, p. 2.

**DISCUSSION**

Pursuant to 28 U.S.C. § 2241, federal prisoners who are "in custody in violation of the Constitution or laws or treaties of the United States," may seek habeas corpus review. 28 U.S.C. § 2241(c)(3). Relief under § 2241 is available to a federal prisoner who challenges the manner in which a sentence is implemented, as opposed to challenging the underlying legality of the conviction. *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) (citing *Chambers v. United States*, 106 F.3d 472, 474–75 (2d Cir. 1997)). A § 2241 petition is thus limited to challenges "to the execution of a sentence ... [which] includes matters such as 'the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions.' " *Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006) (emphasis in original) (quoting *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001)).

Accordingly, the petition seeking to expunge the BOP's disciplinary sanctions from his record, including the loss of good time credits, as a challenge to the execution of his sentence rather than the underlying conviction, is properly brought via an application for a writ under § 2241. *See Carmona*, 243 F.3d at 632 (citing *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812 (10th Cir. 1997) (federal inmate's challenge to loss of good time credits is properly brought under § 2241 because it is a challenge to "an action affecting the fact or duration of the petitioner's custody"); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 758–59 (3d Cir. 1996) (prisoner's challenge to loss of good time

credits following disciplinary proceeding brought pursuant to § 2241);

A federal prisoner seeking relief from adverse custodial conditions under § 2241 must first exhaust his federal administrative remedies. *Carmona v. United States Bureau of Prisons*, 243 F.3d at 634. Since BOP is the agency responsible for administering a federal prisoner's sentence, a petitioner must first exhaust all available administrative remedies provided by BOP before seeking any judicial review. *See Bogarty v. Warden of MDC, Brooklyn*, 2009 WL 4800089, at *1 (E.D.N.Y. December 11, 2009) (citing *United States v. Pineyro*, 112 F.3d 43, 45 (2d Cir. 1997)); *Stergios v. United States*, 2010 WL169484, at *2 (E.D.N.Y. January 15, 2010). Failure to exhaust is excused only if the prisoner comes forward with evidence of "cause for his dereliction and consequent prejudice," and only then if cause-and-prejudice evidence outweighs the interests in judicial economy and accuracy behind the administrative exhaustion requirement. *Carmona*, 243 F.3d at 633–34. Cause and prejudice may be established with evidence of "legitimate circumstances beyond the prisoner's control [that] preclude him from fully pursuing his administrative remedies...." *Id.* at 634.

As set forth in the Declaration of Donna Broome (Item 4-1), a Legal Assistant with the BOP, federal regulations provide that an inmate must exhaust all administrative remedies by first attempting to resolve the dispute informally, raising the complaint with the Warden of the facility within 20 calendar days of the incident, filing an appeal to the Regional Director within 20 calendar days of the date of the Warden's response, and then submitting an appeal to the General Counsel of the BOP within 30 calendar days from the date of the Regional Directors's response. *See* 28 C.F.R. §§ 542.13, 542.14, 542.15. Ms.

Broome accessed the computer indices for administrative remedies filed by petitioner and found that on April 17, 2013, petitioner submitted a Regional Administrative Remedy Appeal regarding the incident of February 14, 2013. On May 17, 2013, the appeal was rejected without a substantive response because it was untimely and petitioner failed to provide verification as to the date he received the Center Discipline Committee ("CDC") report. No further remedy requests or appeals were filed after that date. Item 4-1, ¶¶ 6-7.

The record indicates that petitioner failed to exhaust his administrative remedies. Petitioner was notified of the "final action" of the CDC in a memorandum dated March 14, 2013. Item 4-5, Document 2-h. In the memorandum, he was advised that he could appeal the decision to the Regional Director within 20 days of the receipt of the memorandum. *Id.* Petitioner submitted his appeal to the Regional Director on April 17, 2013, over a month after the date of the CDC report. The appeal was dismissed as untimely and never addressed on the merits.

Petitioner's failure to submit a timely appeal of the disciplinary decision precludes this court's consideration of his habeas corpus petition. *See Chen v. Warden, MDC Brooklyn*, 2013 WL 3326653, *2 (E.D.N.Y. July 1, 2013) (petitioner did not properly exhaust his administrative remedies because he filed his first appeal eight days after the appeal deadline had past.); *Gordon v. Lappin*, 2008 WL 4179233, at *3 (S.D.N.Y. September 10, 2008) (holding that petitioner, whose appeal was "twice rejected for procedural defects ... has failed to exhaust BOP administrative remedies and has procedurally defaulted because the time for him to file his appeal ... has passed"). Moreover, petitioner has not shown any cause for his failure to exhaust or prejudice as a consequence of this default. *See Carmona*, 243 F.3d at 630 ("[A] federal prisoner who defaults in pursuit of his

administrative remedies will ... be denied habeas review absent a showing of cause and prejudice."). Here, petitioner has declined to file a response in support of the petition and has offered neither an explanation for his untimely appeal or a suggestion of consequent prejudice.

Even if the court were to excuse petitioner's failure to exhaust his administrative remedies, it would find that petitioner was afforded all the process he was due. The procedural safeguards to which a prison inmate is entitled before being deprived of a constitutionally cognizable liberty interest are well established, the contours of the requisite protections having been articulated in *Wolff v. McDonnell*, 418 U.S. 539, 564–69 (1974). Under *Wolff*, the constitutionally mandated due process requirements include (1) written notice of the charges to the inmate; (2) the opportunity to appear at a disciplinary hearing and present witnesses and evidence in support of his defense, subject to a prison facility's legitimate safety and penological concerns; (3) a written statement by the hearing officer explaining his decision and the reasons for the action being taken; and (4) in some circumstances, the right to assistance in preparing a defense. *Wolff*, 418 U.S. at 564–70; *see also Eng v. Coughlin*, 858 F.2d 889, 897–98 (2d Cir. 1988). To pass muster under the Fourteenth Amendment, a hearing officer's disciplinary determination must garner the support of at least "some evidence." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985).

Here, the record reflects that petitioner received a written incident report charging him with escape. He was advised of his rights at a disciplinary hearing, waived his right to staff representation, and requested no witnesses. Petitioner denied the charges and explained that he was present at the work location and was never advised that he was to

call the Halfway House. The decision, which was provided in written form, was supported by evidence that the Assistant Director of the Halfway House went to the work site and verified that petitioner was not present. Accordingly, even excusing petitioner's failure to exhaust his administrative remedies, there are no grounds for disturbing the determination and the forfeiture of good time credits.

**CONCLUSION**

For the foregoing reasons, the petition is denied, and the case is dismissed.

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: November 6, 2013
p:\pending\2013\13-518.oct28..2013